

May 10, 2019

<u>*Via CM/ECF*</u>

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Nordlicht, et al., Docket No: 1:16-cr-00640 (BMC)

Dear Judge Cogan:

      On behalf of Defendant Joe SanFilippo, we submit this letter memorandum to preclude a last-minute attempt by the government to introduce false and misleading evidence against our client.

      Yesterday the government noticed Stephen Flatley, an FBI forensic examiner, to testify as a government witness regarding GX-9501, which is a Microsoft Outlook note (the "Note") with comments on various issues that appear to pertain to this case.[1] This exhibit is described in the government's exhibit list as "Outlook Sticky Note of Joseph SanFilippo (3/24/2015)."  (A copy of the Note, along with the government's description of the exhibit, is attached hereto as Exh. A.)  GX-9501 was first produced to Defendants on December 26, 2017, but it was not claimed by the government to be **Mr. SanFilippo's note** until April 11th of this year.  The Bates number of GX-9501 shows that it was obtained nearly three years earlier, through the execution of the government's search warrant on June 22, 2016.

      In fact, GX-9501 was not created by Mr. SanFilippo at all.  It therefore cannot be authenticated under FRE 901(a) and is inadmissible.  It was in fact created by Daniel Mandelbaum, a government witness in this case.

      According to his 3500 material, Mr. Flatley located GX-9501 in a filepath on Platinum Partner's server entitled:

   2016-06-22_11-59-50.E01/Partition 3/NONAME [NTFS]/[root]/Users/jsanfilippo/AppData/Local/ Microsoft/Outlook/JSanFilippo@platinumlp.com.ost»[root]»Root –Mailbox»Shared Data»NoReplyv4»Notes»Issues.  (Hereinafter, the "NoReplyv4 SanFilippo filepath.")

---

[1]    To the extent the government intends to use Flatley to provide expert testimony to authenticate GX-9501, it is precluded from doing so since it failed to notice any expert by the deadline, July 15, 2018.

(See Flatley report, 3500-SF-1, a copy of which is attached hereto as Exh. B, at 5.)  Apparently, the inclusion of "JSanFilippo" within this file path lead Mr. Flatley to conclude, erroneously, that the document was drafted by Mr. SanFilippo.  Even the most basic investigation, however, would have led Mr. Flatley to the correct conclusion.

As the Court will recall, Mandelbaum became PPVA's CFO in late 2014/early 2015, after Mr. SanFilippo stood down from that position because of family health issues.  Mandelbaum resigned from Platinum in October 2015, and Mr. SanFilippo again became CFO.  At that time, Platinum's technology department created a digital mailbox, entitled NoReplyv4, to, among other things, collect post-departure emails to Mandelbaum, which were then forwarded to Mr. SanFilippo's email address.  Around the same time, Platinum appears to have renamed this mailbox "NoReplyv4" and "mounted" it in a filepath shared with Mr. SanFilippo's Outlook.  This is why Mandelbaum's Outlook documents share a specific filepath with Mr. SanFilippo's.  **All** of Mandelbaum's Outlook files are on the NoReplyv4 SanFilippo filepath.

We believe Mr. Flatley would acknowledge that – putting the Note to the side for a moment – not a single document belonging to Mr. SanFilippo can be found on the NoReplyv4 SanFilippo filepath. More critically, the filepath files include not only the Note but **33,524 documents that indisputably belong to Mandelbaum**, including all of his emails, notes, calendar entries, and contacts dating prior to his departure from Platinum.  Among these items are Mandelbaum's security passwords and questions for Mandelbaum's credit cards (e.g., his wife's name, his high school), information for his rental car and other accounts, contact information for his friends and family, his login information and password for his Ancestry.com account, voicemail messages for him, and his LinkedIn correspondence. Beside the Note, there are only three other Outlook notes found on the NoReplyv4 SanFilippo filepath and they include a draft of a speech given at a synagogue (which is identical to a speech Mandelbaum emailed to his wife), and a reference to a chatroom for sexual encounters with strangers. These notes were demonstrably written by Mandelbaum. The metadata for these items all share the same filepath, which is JSanFilippo@Platinumlp.com\Root-Mailbox\Shared Data\NoReplyv4, followed by a specific file such as Inbox, Sent Mail, Notes, Contacts, etc.  Mr. Flatley easily could have discovered this Mandelbaum trove himself had he searched all of Mr. SanFilippo's Outlook files.  Instead, he apparently focused on the pathway of one specific file only (the Note), presumably at the direction of the prosecutors.

The government should have been known better – and presumably did.  Nearly eight months ago, on October 5, 2018, it produced in discovery a copy of the same note (the "Mandelbaum Note"), but bearing a "DM" Bates number (indicating a production from Mandelbaum himself).  (A copy of the Mandelbaum Note is attached hereto as Exh. C.)  Furthermore, the government also produced copies of **all 33,524 Mandelbaum documents** identified above, which were found on the NoReplyv4 SanFilippo filepath.  Surely, Mr. Flatley is not prepared to testify that any of these documents bearing Mandelbaum's name or personal information belong to Mr. SanFilippo.  The truth would have been easy enough for him to discover.

Finally, the contents of the Note itself provided a sufficient basis for the government to at least suspect that the document may have been created by Mandelbaum.  Issues described in the Note relate quite specifically to Mandelbaum's known experiences at Platinum, as disclosed in his interview

statements to the government.  For example, one issue Mandelbaum lists on the Note is "David Steinberg trading in BE [Black Elk]," which he also discussed in his 2016 interviews with the government [e.g., 3500 DMA-1 at 5].  The same is true for the issue of "Nomura['s] call" regarding Steinberg, which Mandelbaum also appears to have discussed with the government [3500 DMA-3 at 5].  By contrast, none of the issues in the Note has anything to do with Mr. SanFilippo's job responsibilities, which centered around financial reporting and not redemptions policies or trading in Black Elk.  Both in tone and in substance, the Note is foreign to Joe SanFilippo.

The government bears the burden of establishing that GX-9501 "is what the proponent claims it is."  FRE 901(a).  In the Second Circuit, "[t]his requirement is satisfied 'if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'"  *United States v. Pluta,* 176 F.3d 43, 49 (2d Cir. 1999) *(quoting United States v. Ruggiero,* 928 F.2d 1289, 1303 (2d Cir. 1991)).  Here, for all of the above reasons, the government cannot come close to making such a showing.  It almost goes without saying that the prejudicial impact of GX-9501 upon Mr. SanFilippo far exceeds any probative value.

We respectfully request that the Court preclude the testimony of Mr. Flatley and the introduction of GX-9501 into evidence.

Dated:  New York, New York
        May 10, 2019

                                                        Respectfully submitted,

                                                        _____
                                                        Kevin J. O'Brien
                                                       Adam C. Ford
                                                       Matthew A. Ford
                                                       Anjula Prasad
                                                       FORD O'BRIEN LLP
                                                       575 Fifth Avenue 17th Fl.
                                                       New York, New York 10017