UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- against -

MARK NORDLICHT,
DAVID LEVY and
JOSEPH SANFILIPPO,

Defendants.

DECLARATION

16 CR 640 (BMC)

---

AMBER R. JORDAN hereby declares under penalty of perjury:

1. I am currently an Inspector Attorney with the Office of Counsel for the United States Postal Inspection Service ("USPIS"). From August 2013 until March 2019, I was a Postal Inspector with the USPIS. As a Postal Inspector, my duties were to investigate any and all federal crimes through the mail and financial fraud. I am an attorney and was licensed to practice law in Missouri and Virginia. Prior to my employment at USPIS, I practiced in state courts in Missouri and Virginia in civil and administrative law matters.

2. As part of my official duties with the USPIS, beginning in or about April 2016 and continuing through the present, I have been assigned as one of the case agents responsible for the investigation of, inter alia, the defendants Mark Nordlicht, David Levy and Joseph SanFilippo. As part of my official duties I regularly interact with trial witnesses, co-defendants and their attorneys.

3. I have been one of the case agents sitting at the government's table since trial began on April 15, 2019. I also sat at the government's table in February during jury

selection for the earlier trial date. I have assisted in escorting witnesses to and from the courtroom during this trial.

4. I was present at trial on Thursday, May 9, 2019. A government witness, Josh Zeitman, was scheduled to begin his testimony that day. I knew that Mr. Zeitman was represented by counsel during his interactions with the government leading up to trial.

5. Prior to Mr. Zeitman's testimony, I was speaking with a family member of the prosecution team in the hallway outside the courtroom. During that conversation, Mr. Fodeman, counsel for defendant David Levy, approached the family member and addressed the family member as "Mr. Zeitman." I informed Mr. Fodeman that the individual he had approached was not Mr. Zeitman.

6. Later that day, May 9, Mr. Zeitman began his trial testimony. His testimony was not completed that day and he was set to return to court the following trial day, Tuesday, May 14, 2019. At the end of the trial day, I escorted Mr. Zeitman out of the courthouse to where he was going to meet a car service that was scheduled to pick him up.

7. During our walk to meet his car service, I informed Mr. Zeitman that members of the defense team may contact him over the weekend. I told him this because a member of the defense team had approached someone they believed to be Mr. Zeitman to speak, and I knew Mr. Zeitman was represented by counsel.

8. During our brief conversation on the way out of the courthouse, I informed Mr. Zeitman that if defense counsel contacted him, it was his choice whether or not to speak with any party, including the government, but that he did not have to speak with anyone. I asked him to repeat my statement to make sure he understood me and Mr. Zeitman confirmed that he understood it was his choice and he did not have to speak with anyone.

9. I informed him that if he had any questions about this, he should speak with his attorney.

10. Mr. Zeitman asked me what would happen if I spoke to defense counsel. I again directed him to speak with his attorney. I did inform Mr. Zeitman that if he chose to speak with defense counsel, they were free to memorialize any conversations they may have, just as the government could.

11. At the end of our conversation, I informed Mr. Zeitman of the time he needed to be at trial on Tuesday, May 14, 2019, and provided him with the address of the courthouse. Mr. Zeitman wrote down the information I provided on a piece of paper he had in his coat pocket. Mr. Zeitman thanked me, wished me a nice weekend and I watched him wait for his car service. Mr. Zeitman did not appear to me to be upset or nervous following our conversation.

12. At no point did I instruct Mr. Zeitman that he should not speak with or cooperate with defense counsel.

13. At no point did I tell Mr. Zeitman it would be detrimental to the case if he did speak with defense counsel.

14. At no point did I tell Mr. Zeitman if he spoke with defense counsel, there would be repercussions from the government.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated:   Brooklyn, New York
         May 21, 2019

AMBER R. JORDAN

3